Luke Busby, Esq.
216 East Liberty Street
Reno, Nevada 89501
(775) 453-0112 (Dial Area Code)
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for Stephanie Ridgway*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEPHANIE RIDGWAY,<br><br>  Plaintiff,<br><br>vs.<br><br>SUN VALLEY GENERAL IMPROVEMENT DISTRICT,<br><br>  Defendant,<br>_____/ | Case No.: 3:15-cv-00002-HDM-WGC<br><br>**RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

    Pursuant to Federal Rule of Civil Procedure ("FRCP") 56, Plaintiff Stephanie Ridgway ("Plaintiff" or "Ridgway") by and through the undersigned counsel, respectfully files the following Opposition to the August 26, 2015 Motion for Summary Judgment ("Motion") filed by Defendant SUN VALLEY GENERAL IMPROVEMENT DISTRICT ("Defendant" or "SVGID").

    This Opposition is made and based upon all of the pleadings and records on file for this proceeding together with every exhibit that is mentioned herein or attached hereto (each of which is incorporated by this reference as though it were set forth hereat in haec verba), if any there be, as well as the points and authorities set forth directly hereinafter.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STANDARD OF REVIEW

1. Pursuant to FRCP 56, an order granting summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

2. In order to survive a summary judgment motion on her premises liability claim, Plaintiff must show there are factual disputes as to: (1) duty; (2) breach; (3) actual causation; (4) legal causation; and (5) damages. *Riley v. OPP IX L.P.,* 112 Nev. 826, 830 (Nev. 1996) citing *Sims v. General Telephone & Electric*, 107 Nev. 516, 521, (1991).

3. SVGID is a political subdivision of the State of Nevada and is a General Improvement District located in Sun Valley, Nevada organized pursuant to Nevada Revised Statutes ("NRS") 318.010 et seq. Pursuant to NRS 318.115, SVGID can sue and be sued and is the proper Defendant in this matter. Pursuant to NRS 41.031 the State of Nevada has waived its immunity from liability and action and has consented to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations. In accordance with such rules, SVGID had a duty to maintain the Sun Valley Pool in a safe condition and to exercise reasonable care not to subject others to an unreasonable risk of harm. *Riley v. OPP IX L.P.*, 112 Nev. 826, 831 (Nev. 1996). SVGID is not free from the duty to exercise reasonable care solely because the danger posed may have been be open and obvious. *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012). The risk of harm to Ridgway was foreseeable and consequently gave rise to a duty to protect or warn Ridgway. *Foster v. Costco Wholesale Corp.*, 291 P.3d at 155 (Nev. 2012). Whether the condition of the Pool constitutes a hazard is a question of fact for the jury. *Chastain v. Clark County Sch. Dist.*, 109 Nev. 1172, 1178 (Nev. 1993).

## II. FACTS

4. On June, 20, 2014 the Plaintiff was swimming with her family at the swimming pool owned and operated by SVGID located at 115 West 6th Avenue in Sun Valley, Nevada (hereinafter "the Pool"). (Exhibit 1 page 21 line 2)

5. The Plaintiff testified that a lifeguard at the Pool suggested that she go down the "big, tall blue" slide that was the fastest. (Exhibit 1 Page 89 line 23) The Plaintiff identified this slide as the "Blue Team Tube" slide. (Exhibit 1 page 84 line 3)

6. The Plaintiff went down the Blue Team Tube slide and struck the bottom of the Pool with her foot. (Exhibit 2 page 2 line 3). The Plaintiff described her injury as follows: "Well, I went down, and it was great, but I remember hitting the water, and the next thing I heard was a crack." (Exhibit 1 page 93 line 24).

7. Striking the bottom of the pool caused substantial and extremely painful injuries to the Plaintiff, including but not limited to a fracture to the Plaintiff's ankle, for which the Plaintiff was required to seek emergency treatment and later surgery. (Exhibit 2 page 2 line 3 and line 27).

8. SVGID's Incident Report, which was authored by lifeguard Colin Ray, describes what occurred and is attached hereto as Exhibit 3. SVGID's Incident Report in Exhibit 3 confirms that the Plaintiff went down the dark blue slide at the Pool on June 20, 2014 and hurt her ankle after striking the bottom of the Pool, and that lifeguard Brian Pachnik provided care after the Plaintiff was injured.

9. After striking the bottom of the Pool, the Plaintiff heard a lifeguard on duty at the Pool state that the Plaintiff was not the first person to be hurt using the slide (Exhibit 2 page 3 line 8). At her deposition, the Plaintiff stated that she heard a lifeguard state, "Don't feel bad. This has happened before." (Exhibit 1 page 103 line 14)

10. Other witnesses present at the time Ridgway was injured heard a lifeguard who was treating the Plaintiff after her injury making statements about the past incidences where others had been injured using the waterslide that the Plaintiff used. One such witness, Cynthia Sanchez, executed an Affidavit describing these events and statements, which is attached hereto as Exhibit 4, and states that the lifeguard who was helping Ridgway made such statements. Because these statements were made immediately after Ridgway was injured, they show that SVGID had express knowledge that the slide was a hazard before Ridgway was injured.

11. At deposition of Brian Pachnik, who has been a lifeguard at the Pool for five years and was present the day of the incident (Exhibit 5 page 6 line 20) and who is identified in SVGID's Incident Report in Exhibit 3 as the lifeguard who provided care to Ridgway after she was injured, Mr. Pachnik confirmed that he had seen other patrons at the Pool had hit the bottom of the pool after using the waterslide:

> Q: Have you ever seen anyone else hit the bottom of the pool after going down the slides?
> A: Never seen anybody get hurt on it.
> Q: Have you seen anybody hit the bottom of the pool after using the slide?
> A: Yeah, I've seen people like scrape their foot or something. Nothing serious.
> (Exhibit 5 page 11 line 9)

12. Mr. Pachnik also confirmed that when a person goes down the slide that Ms. Ridgway was injured using, that they are in the shallow end of the Pool, and that he believes that the Pool is only three and a half feet deep at that point.

> Q: Is the Blue Team Tube -- when someone goes down that slide, do they end up in the deep end of the pool?
> A: They're in the shallow end of the pool.
> Q: Do you know deep it is at that point?
> A: I think it's three and a half feet.
> Q: It's not very deep, is it?
> MS. PARKS: Objection, calls for speculation, argumentative.
> Q: Go ahead and answer the question.
> A: I don't know. I was going to say like it's for kids to go on.
> (Exhibit 5 page 12 line 15)

13. Mr. Pachnik confirmed that there are no rules at the Pool to prohibit adults from using the slides. (Exhibit 5 page 12 line 23)

14. Mr. Pachnik confirmed that it is common knowledge among the lifeguards that people hit the bottom of the Pool after using the slide that the Plaintiff was injured using. (Exhibit 5 page 13 line 19).

15. At the deposition of Colin Ray, who has been a lifeguard at the Pool since 2013, Mr. Ray confirmed that he had also seen other customers at the Pool his the bottom after using the slide:

> Q: Okay. Have you ever seen anyone else get hurt on the pool, on the slides, at Sun Valley Pool?

4

> A: Other than like little minor cuts and scrapes, like from people going too fast down and like hitting their foot and scraping it at the bottom, other than that, no.
> Q: So other people have hit their feet on the bottom of the pool on the same slide?
> A: Bigger people. So like, I would say, 18 and up, taller, probably about like 5'8" or taller, they would hit the bottom.
> (Exhibit 6 page 10 line 24)

16. Mr. Ray elaborated that larger people would hit the bottom of the Pool using the same slide that the Plaintiff was injured while using:

> Q: Okay. And did you see any other large people hit the bottom of the pool while using the same slide?
> Are you talking about --?
> Q: I'm talking about large in terms of weight.
> A: Well, yes, of course, but I mean in my years of working there?
> Q: Yeah.
> A: Yes, I have. I've seen one older male go down probably about mid-40s, and he would go down the dark blue slide all the time and, like, curled in a ball. He would never hit the bottom.
> Q: But other people would?
> A: Some people would, yeah.
> (Exhibit 6 page 14 line 2)

17. Mr. Ray also stated that the slides at the Pool were for children:

> Q: I asked you if other people had hit their feet on the bottom of the pool when you were explaining that larger people and I asked you what you meant by larger people.
> A: Taller, heavier. I mean I sometimes do it. If my feet are completely straight then I will hit it. But I gotta ball up a little bit because they're child slides. They're meant for children.
> (Exhibit 6 page 11 line 20)

18. Mr. Ray also confirmed that he had conversations with other lifeguards about patrons hitting the bottom of the Pool after using the slides. (Exhibit 6 page 16 line 3).

19. Mr. Ray also stated that he had hit the bottom of the pool after using the waterslide (Exhibit 6 page 12 line 6).

20. The facts above show that the Defendant SVGID had actual and express knowledge that the slide at the Pool, which caused the injuries to the Plaintiff, was dangerous and hazardous before Ridgway was injured, as is made clear by the statements of the lifeguards as

described above and by the admissions described by the Plaintiff at her deposition in Exhibit 1 and Ms. Sanchez in Exhibit 4.

21. The Plaintiff injuries have required expensive medical treatment, including surgery. The Plaintiff described these expenses in Exhibit 2 on page 4 at line 8.  The Plaintiff mitigated her damages by seeking medical treatment for her injuries in a timely manner.

### III. SVGID'S MOTION

22. SVGID's Motion makes the following two main arguments: (1) NRS 41.033 and Nevada case law including *Chastain v. Clark Co. School Dist.,* 109 Nev. 1172 (1993) and *Nardozzi v. Clark Co. School Dist.*, 108 Nev. 7 (1992), provides immunity to SVGID in this case (Motion at page 6 line 13); and (2) There is no admissible evidence that shows that SVGID had express knowledge of a hazard that an adult, such as Ridgway, could be seriously injured while using one of the waterslides at the Pool (Motion at page 6 line 23).  The Plaintiff will respond to SVGID's arguments in turn below.

**a. SVGID is Not Immune from liability because it had Express Knowledge that the Slide was a Hazard**

23. SVGID's Motion argues that it is immune from liability in this matter per NRS 41.033.  (Motion at page 6 line 1) NRS 41.033 generally shields a local government from liability for failure to inspect a facility to discover a hazard.  However, a very clear exception to this general rule exists.  In cases where a known hazard exists, and a local government fails to act to correct the known hazard, the local government is liable for damages caused by the hazard. *Crucil v. Carson City*, 95 Nev. 583 (Nev. 1979), *Butler v. Bogdanovich*, 101 Nev. 449 (1985), *Davenport v. County of Clark*, 111 Nev. 467 (1995).   Because the facts detailed above show that SVGID did have express knowledge of the hazard, summary judgment based on NRS 41.033 is not appropriate.  At a minimum, a genuine issue of material fact exists as to whether SVGID had such knowledge. Whether the slide actually constitutes a hazard is a question of fact for the jury. *Chastain v. Clark County Sch. Dist.*, 109 Nev. 1172, 1178 (Nev. 1993).

24. The cases cited by SVGID in the Motion to not support summary judgment in SVGID's favor:  In *Chastain v. Clark County Sch. Dist.*, 109 Nev. 1172, 1178 (Nev. 1993), the Court reversed an order on summary judgment, concluding that an injury may have been caused by an inadequate amount of sand in a sandbox and that NRS 41.033 did not provide immunity on that claim because the school was aware of the lack of sand in the sandbox.

6

Similarly, the facts above indicate that SVGID's lifeguards were aware of the hazard related to the waterslide at the Pool at the time Ridgway was injured. In *Nardozzi v. Clark Co. School Dist.*, 108 Nev. 7 (1992), a plaintiff slipped and fell at an elementary school. The School District denied having any knowledge of a hazard, and the Court ruled that implied knowledge of a defect did not bar the school district from asserting immunity. That is, implied knowledge is not enough to overcome the bar set by NRS 41.033. The holding in *Nardozzi* is not applicable to Ridgway's case because the testimonies of the lifeguards detailed above shows that SVGID had express knowledge, and not implied or constructive knowledge, of the hazard created by the slides as the evidence shows that other patrons had hit the bottom of the pool using the slides and that this was common knowledge among the lifeguards at the Pool.

### b. The Admissible Evidence that shows that SVGID was aware of the Hazard is Provided Herein

25. As explained above, admissible evidence in the form of testimony by SVGID lifeguards Brian Pachnik and Colin Ray shows: (1) other patrons at the Pool had hit the bottom after using the waterslide and had been injured; (2) that it was "common knowledge" that this had occurred; and that (3) taller and larger patrons were more likely to hit the bottom of the Pool after using the waterslides because the slides are for children. The testimonies of the lifeguards and the other facts detailed above meets the admissibility requirements of FRCP 56(c)(1)(a), as this evidence is from "…particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

26. FRCP 56 requires that a movant must properly support a motion for summary judgment with admissible evidence sufficient to show that no genuine issue of material fact remains for trial and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986). As explained below, the Plaintiff submits that the contents of SVGID's Motion fail to meet this burden.

27. Attached to SVGID's Motion as Exhibit 1 is the Affidavit of Mike Artiza, who is identified as the Public Works Director of SVGID, and whose job duties include oversight of the Pool. Aritza's Affidavit states that he is not aware of any incidents or accidents at the Pool in which a patron was injured significantly enough to require medical attention by virtue of

7

coming into contact with the bottom of the Pool after using the slides at the Pool, other than the incident involving the Plaintiff. The Plaintiff respectfully submits that this claim in Aritza's affidavit is insufficient to show what SVGID claims it shows, i.e. that SVGID had no express knowledge that a hazardous condition existed at the Pool. Aritza's Affidavit does not state that no person employed by SVGID was aware of the hazardous condition of the slide, only that Aritza was unaware.

28. Further, Aritza's Affidavit does not state that Aritza did not have knowledge that other patrons of the Pool had hit the bottom of the Pool after using the waterslides. It merely states no one was injured "significantly enough" using the slides to require medical attention. This is essentially an admission that Aritza was aware that other patrons had hit the bottom of the Pool and been injured using the slides at the Pool. Lack of an injury "significant enough" to warrant medical attention does not negate the allegation that express knowledge of the hazardous condition existed. If a hazard exists, and a local government has express knowledge of the hazard, then liability based on the duty that the express knowledge creates must lie.

29. The question before the Court is whether SVGID had express knowledge of the hazard, not whether someone had been significantly injured because of the hazard. SVGID is conflating these two issues. By SVGID's logic, a local government could wait for someone to get seriously injured before correcting what it knows is a hazard, and only then, after someone gets hurt, be obliged under the law to correct the hazard. By analogy, this would allow a local government to claim that a bridge collapse on a major freeway about which the local government had express knowledge would not be a hazard until a person actually drives off the bridge. This is an absurd result and the Court should not adopt this reasoning here.

### IV. RIDGWAY'S PRIMA FACIE PREMISES LIABILITY CLAIM

30. SVGID has a duty to maintain the Pool in a safe condition and to exercise reasonable care not to subject others to an unreasonable risk of harm. The facts listed above show that SVGID had express knowledge that other patrons at the Pool had struck the bottom of the Pool and been injured after using the waterslide. Striking the bottom of the Pool after using a waterslide is a hazard. It was clearly foreseeable that if patrons were striking the bottom of the Pool using the slide, that eventually someone would be seriously inured using it. Thus, SVGID is not immune from its duty of care owed to Ridgway based on the exclusion provided in NRS 41.033. SVGID breached its duties to Ridgway by: (1) allowing her to use a waterslide

that SVGID had express knowledge is a hazard and/or failing to correct the hazard once SVGID had express knowledge of the hazard; and (2) by failing to warn her that the slide was hazard for larger individuals and was intended for use by children. But for SVGID's actions and omissions, Ridgway's injuries would not have occurred, i.e. had the slide been removed from the Pool or the condition otherwise corrected once SVGID knew the slide was a hazard and/or had SVGID warned Ridgway that the slide was intended for children and that she may be severely injured using it, Ridgway would not have been injured. SVGID's actions and omissions related to the slide are also the proximate cause of Ridgway's injuries, as the event that led to her injuries, i.e. SVGID making the slide available to adults and failing to warn that it was intended for children or correct its hazardous condition, was sufficiently related to the injuries she suffered to impose liability. Ridgway has suffered a broken ankle, which required medical treatment as described in the facts above. Base on the fact that other patrons at the Pool had hit the bottom of the Pool after using the slide and been injured, it was forseeable that an injury like the one Ridgway suffered would eventually occur. Ridgway mitigated her damages by seeking medical treatment for her injures in a timely manner. Thus, pursuant to the requirements in *Riley v. OPP IX L.P.,* 112 Nev. 826, 830 (Nev. 1996) citing *Sims v. General Telephone & Electric*, 107 Nev. 516, 521, (1991), summary judgment should not be granted to SVGID in this matter as a genuine issue of material fact exists to each element of her premises liability claim and there is sufficient evidence for a reasonable jury to return a verdict for Ridgway.

BASED ON THE FORGOING, the Plaintiff respectfully requests that the Court deny SVGID's Motion for Summary Judgment and allow this case to proceed to trial by Jury.

RESPECTFULLY submitted this Monday, August 31, 2015,

By: _____/s/ Luke A. Busby_____

Luke Busby, Esq.
Nevada State Bar No. 10319
321 S. Arlington Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for Stephanie Ridgway*

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, August 31, 2015, I electronically transmitted the forgoing pleading to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel registered to receive Electronic Filings and/or I mailed the forgoing pleading to the address below by US Mail postage prepaid.

Charles Burcham, Esq.
Thorndal Armstrong
6590 S. McCarran Blvd. Suite B.
Reno, NV 89509
*Attorney for the Defendant*

By: _____/s/ Luke A. Busby_____

Luke Busby

**Exhibit List**

1. Deposition of Stephanie Ridgway
2. Ridgway Response to Defendant's First Interrogatories
3. SVGID Incident Report
4. Affidavit of Cynthia Sanchez
5. Deposition of Brian Pachnik
6. Deposition of Colin Ray