Charles Burcham, Esq. – State Bar No. 2673
Thorndal Armstrong Delk Balkenbush & Eisinger
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882
Attorney for Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

STEPHANIE RIDGWAY,

                    Plaintiff,

vs.

SUN VALLEY GENERAL IMPROVEMENT DISTRICT,

                    Defendants.

CASE NO.   3:15-cv-00002-HDM-WGC

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

    COMES NOW Defendant, Sun Valley General Improvement District, by and through its attorneys, Thorndal Armstrong Delk Balkenbush & Eisinger, and hereby submits its Reply Memorandum of Points and Authorities in support of its Motion for Summary Judgment. Through this undertaking, SVGID will endeavor to address the primary issues raised in Plaintiff's opposition memorandum. The failure of SVGID to address any particular issue of law or fact in this reply should not be taken as an admission by SVGID that Plaintiff's position has any merit whatsoever.

    This reply is based upon the Points and Authorities attached hereto and all pleadings and papers on file herein.

    DATED this 24th day of September, 2015.

                                      THORNDAL ARMSTRONG
                                      DELK BALKENBUSH & EISINGER

                                      By:   */s/ Charles Burcham*
                                              Charles L. Burcham, Esq., SBN 2673
                                              6590 S. McCarran Blvd., Suite B
                                              Reno, Nevada 89509
                                              (775) 786-2882
                                              Attorney for Defendant

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND SUMMARY OF SVGID'S LEGAL ARGUMENT

This is a governmental premises liability case. It deals with an incident that occurred at the swimming pool operated by Sun Valley General Improvement District ("SVGID"). In particular, the incident happened when the Plaintiff, Stephanie Ridgway, used one of the pool's waterslides, struck the bottom of the pool, and broke her ankle. This is the first time in the known annals of the pool and the pool slide in question that anything along these lines had ever happened. It is also diametrically opposed to all other known "incidents" regarding the pool slide, which uniformly included children who were too young or not water safe and found themselves in distress because the water was too deep. It was for that reason -- water being too deep for young users -- that a lifeguard was stationed nearby. *See*, supporting Affidavit of Mike Ariztia, appended to SVGID's moving papers as Exhibit 1.

NRS 41.033 provides governmental immunity for failing to inspect, whether or not there was a duty to inspect, or failing to discover a hazard, whether or not an inspection was performed. In the context of a governmental premises liability case such as this one, NRS 41.033 has been read to provide immunity to a public entity such as SVGID unless the entity has express knowledge of a condition that was a hazard and thereafter failed to act reasonably. *Nardozzi v. Clark Co. School Dist.*, 108 Nev. 7, 823 P.2d 285 (1992) and *Chastain v. Clark Co. School Dist.*, 109 Nev. 1172, 866 P.2d 286 (1993).

In the case at bar, Plaintiff's incident was unprecedented. Never before had anyone been significantly injured while using the pool's waterslide and striking the bottom of the pool. Simply stated, there is no evidence that SVGID had express knowledge of the type of "condition" that is being alleged by Plaintiff in this case: A pool bottom that was too shallow.

As a result, NRS 41.033 provides SVGID with immunity from liability in this case.

It is important to keep in mind that in SVGID's motion and in this reply, the issue before the Court is stated in terms that are relevant to the reality of this case. The issue is not theoretical, but it is grounded in reality: Is there any evidence that SVGID had express

knowledge that an adult such as Plaintiff could ever use the slide and strike the bottom of the pool with sufficient force to cause significant injury?

The reason that the issue has to be couched in these terms is because SVGID's "express knowledge" must have relevance to Plaintiff's actual injury, and the actual injury was significant (a broken ankle requiring surgery) and not some random scrape or cut.

The foregoing is a basic fundamental synopsis of SVGID's position in this matter. SVGID will now address each and every numbered paragraph that is found in Plaintiff's opposition brief. SVGID's position will be expounded upon as necessary and warranted in that discussion. After that, SVGID will return to a brief restatement of its legal argument.

## II.

### LINE ITEM RESPONSES TO PLAINTIFF'S THIRTY NUMBERED PARAGRAPHS CONTAINED IN HER OPPOSITION ARGUMENT

Plaintiff's opposition brief contains 30 numbered paragraphs. In light of this, and for ease of analysis, each numbered paragraph will be separately addressed below. The numbers that are used in this brief will correspond with the numbered paragraphs in Plaintiff's brief.

1. Plaintiff discusses general summary judgment standards in this paragraph. For current purposes, SVGID has no quarrel with the contents of this paragraph.

2. This paragraph deals with what Plaintiff must show in terms of factual disputes to defeat this motion. In response, SVGID notes that Nevada law is *very clear* that the issue of "duty" in a negligence case is one of law for the Court to decide. Indeed, in *Turner v. Mandaley Sports Entertainment*, *LLC,* 124 Nev. 213, 220-21, 180 P.3d 1172 (2008), the Nevada Supreme Court specifically held as follows: "We have clearly and consistently stated – since at least 2001 – that whether a duty exists is actually a question of law to be determined solely by the Courts." Similarly, in *Butler v. Bayer*, 123 Nev. 450, 461, 168 P.3d 1055, 1063 (2007), Nevada's highest court wrote: "[b]ecause the existence of a 'duty' is a question of law, if this court determines that no duty exists, it will affirm summary judgment for the defendant in a case involving negligence."

In the case at bar, the existence of a "duty" to act on the part of SVGID with respect to

1  the swimming pool and the slides is accordingly something for the Court to decide and is not a
2  factual question precluding summary judgment. The focus of this inquiry is necessarily
3  SVGID's express knowledge of a condition at the pool that might be hazardous to someone such
4  as Plaintiff. The question is not whether the condition of the pool is a hazard, but rather whether
5  SVGID had actual knowledge of a condition that constituted a hazard. That is an issue of law for
6  the Court to decide. SVGID submits that the answer to that question is clearly that SVGID had
7  no such express knowledge, since Plaintiff's injury was completely unprecedented and
8  diametrically opposed to other known incidents involving the slide and the pool, and as a result,
9  summary judgment is warranted since a key component to the tort of negligence (duty) is absent
10 as a legal matter.

11     3.    This paragraph discusses various issues, including SVGID's status, which is non-
12 controversial. It also discusses NRS 41.031, and accurately states Nevada's (limited) immunity
13 waiver.

14     What this paragraph fails to comprehend, however, is that general premises liability law
15 does not apply to a governmental entity such as SVGID. Rather, a public entity such as SVGID
16 has immunity unless it had express knowledge of a condition that was a hazard and thereafter
17 failed to act reasonably. *See*, *Nardozzi, supra* and *Chastain, supra*.

18     4.    This is an accurate factual statement.
19     5.    Plaintiff testified this way in her deposition.
20     6.    Plaintiff testified this way in her deposition.
21     7.    This is the way that Plaintiff described the incident and her injuries in her
22 Answers to Interrogatories.
23     8.    This is generally consistent with what is stated in SVGID's incident report.
24     9.    This generally is an accurate statement of what Plaintiff wrote in her Answers to
25 Interrogatories and testified to in her deposition. That having been said, this also constitutes
26 inadmissible hearsay that cannot be used to defeat a motion for summary judgment.

27     In that regard, SVGID specifically objects to inadmissible hearsay in this summary
28

- 4 -

1 judgment litigation. *See, Fed. R.Civ.P. 56(c)(4).* [1]

2  10.  The contents of this paragraph again constitute completely inadmissible hearsay that cannot be used in summary judgment litigation. Plaintiff argues in this paragraph that because these hearsay statements "were made immediately after Ridgway was injured," they show that SVGID had express knowledge that the slide was a hazard before Ridgway was injured. Those inadmissible hearsay statements show no such thing and cannot even be considered at this point in the litigation.

As set forth in SVGID's moving papers, there is no admissible evidence that anyone had ever been significantly injured by striking the bottom of the pool after using the waterslide. Not one shred of evidence exists that prior to June 20, 2014, SVGID had any actual or express knowledge that an individual of Plaintiff's size and weight using the subject waterslide could ever strike the bottom of the pool with sufficient force to fracture a bone, or otherwise experience significant injury. As set forth in the Affidavit of Michael Ariztia that was attached to SVGID's moving papers, the danger, if any, posed by the waterslides involved young patrons who were not sufficiently water-safe or found themselves in water that was *too deep* for them, which is a reason that a lifeguard was stationed nearby.

Simply stated, there is no evidence anywhere in the record of prior incidents similar to Plaintiff's. By definition, there is no evidence that SVGID was on actual notice of a relevant dangerous condition with the slides that could give rise to a "duty" to act. Again, this existence of a "duty" is a question of law for the Court to decide.

 11.  In this paragraph, Plaintiff discusses the deposition of Brian Pachnik, who was a lifeguard at SVGID's pool. This testimony from Mr. Pachnik is key to this discussion. Mr. Pachnik saw people scrape themselves on the bottom of the pool after using a waterslide, but he never saw anyone get hurt. That is the point of this entire motion! SVGID was not on actual notice of any condition at the pool's waterslide that is relevant to Plaintiff's injury, i.e., a situation

---

[1] It is clear that hearsay cannot be considered on summary judgment. For instance, in *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008), the Court noted that when an affidavit contains an out-of-court statement offered to prove the truth of the statement, that is inadmissible hearsay, and the statement may not be used to defeat a Motion for Summary Judgment. See also, *Jackson v. Park Place Condominiums Association, Inc.*, No. 15-3067 (10th Cir. July 28, 2015).

1  where someone significantly injured themselves after using the slide and striking the bottom of
2  the pool.  A random scrape here and there is not a broken bone and is most certainly not a serious
3  injury.  It is submitted that anyone who has ever used any type of pool at any time in life has "hit
4  the bottom" after jumping off the side into the water, diving from a board or otherwise entering
5  the water after using a slide.  That is an everyday occurrence across the United States and indeed
6  the world.  It is the nature of swimming pools.

7  Swimming pools are not the ocean; they have a bottom that is only a few feet from the
8  surface.  In the instant case, as set forth in the Affidavit of Mr. Ariztia, the "risk," if any, posed
9  by the slide at this pool was that young children who were not water safe or who could not touch
10 the bottom would find themselves in distress because the water was too deep.  In reaction to that
11 perceived hazard, SVGID did the reasonable thing:  It stationed a lifeguard nearby who could
12 address any problems of youngsters in distress after using the slide.  There is no evidence to
13 support any contention that it was expressly on SVGID's radar screen that heavy adults, such as
14 Plaintiff, could be injured while using the slides because, presumably, the condition of the pool's
15 water was too shallow for them.  As a result, no "duty" arose on the part of SVGID with respect
16 to Plaintiff, as a matter of law.

17  12. This paragraph again cites the deposition testimony of Mr. Pachnik regarding the
18 depth of the water near the slide.  Mr. Pachnik stated that the slide was located near the shallow
19 end of the pool that was around 3 ½ ft. deep.  Not to beat a dead horse, but it bears repeating that
20 any hazardous condition associated with this slide had to do with young children who found the
21 water too deep, not adults who found the water too shallow.  There is no evidence, nor any
22 reasonable inference from admissible evidence, that SVGID had express knowledge that an adult
23 would have a problem similar to Plaintiff when using the slide.  Since express knowledge
24 equates to duty, the lack of actual knowledge equates to no duty, as a matter of law.[2]

25 [2] Notably, Plaintiff has presented no evidence to the Court that there were any design or
26 maintenance problems with the pool.  The level of water was fine (as opposed to the known
   inadequate level of sand in *Chastain*) and there is no evidence that design criteria were not
27 followed.  Indeed, Plaintiff seems to argue that she is entitled to compensation, or at least entitled
   to ask the jury for compensation, just because she was injured at the pool.  It is fundamental law
28 that the mere fact that someone had an accident and was injured is not sufficient to show
   liability.  *Gunlock v. New Frontier Hotel,* 78 Nev. 182, 185, 370 P.2d 682 (1962).

1    13.     It is true that there were no rules at the SVGID pool to prohibit adults from using
2  slides.
3    14.     It is true that Mr. Pachnik testified about common knowledge among lifeguards.
4  To the extent that Mr. Pachnik is qualified to testify regarding what is in the brain of others, it
5  bears repeating that hitting the bottom of a pool certainly does not and cannot equate with
6  something that might cause an injury of any consequence.  At the moment that the Honorable
7  Court is reading these words, there are probably hundreds, thousands or even tens of thousands
8  of people around the world who are in swimming pools and are hitting the bottom after jumping
9  into them, using a diving board, slide or other apparatus.  This is a phenomenon that is simply
10 indigenous to swimming pools.  The question becomes, of course, whether SVGID had any
11 express knowledge of a condition at the pool that would allow someone to use a slide and hit the
12 bottom of the pool with sufficient force to cause significant injury.  The evidentiary record is
13 completely absent in that regard, and this equates to immunity on the part of SVGID.
14    15.     In this paragraph, Plaintiff discusses the deposition testimony of Colin Ray, who
15 is also a pool lifeguard.  In his deposition, Mr. Ray stated that he had seen other people use the
16 slides, hit the bottom and have little minor cuts and scrapes.  This again is absolutely supportive
17 of SVGID's entire argument in this motion.  The question is not whether someone had ever had a
18 minor cut or scrape after using the slides.  The pertinent question is whether there is any
19 evidence that a patron using the slide, such as Plaintiff, could be seriously injured as a result of
20 hitting the bottom with sufficient force.  Again, it has to be kept in mind that issues associated
21 with these slides, as shown in Mr. Ariztia's affidavit, had to do with children finding the water
22 too deep for them and not being water safe.  The record is utterly devoid of any evidence that
23 someone, such as Plaintiff, could be seriously injured as the result of striking the bottom of the
24 pool after using the slide, which again equates to water that is too shallow as opposed to too
25 deep.  This is almost a situation of "no good deed goes unpunished."  A swimming pool in
26 general and waterslides at a pool in particular provide a benefit to the community.  There are
27 obviously risks associated with either a pool or a slide, and the known risk that SVGID
28 responded had to do with water that was too deep for certain children, and the response was to

station a lifeguard nearby. There is no evidence that prior to Plaintiff's incident, SVGID expressly knew that any risk associated with the waterslide involved a large adult, such as Plaintiff, striking the bottom of the pool and being injured because the water was too shallow. That was simply not on SVGID's actual radar screen, and constructive or "should have" knowledge will not do for purposes of NRS 41.033 immunity.

16. In this paragraph, Plaintiff discusses further testimony from lifeguard Ray regarding "large people" hitting the bottom of the pool. This is again complete support for the proposition that SVGID had no express knowledge that a large person could ever be significantly injured by hitting the bottom of the pool after using the waterslide in question. Furthermore, it is notable that Mr. Ray stated that in the "years" working at the pool, he had seen one older male go down the subject slide all the time, curled up like a ball, and that he would never hit the bottom. Furthermore, this particular quoted testimony once again provides utterly no support for the "express knowledge" requirement that Plaintiff must establish in order to avoid immunity in this case.

17. In this paragraph, Plaintiff discusses further testimony by Mr. Ray regarding the notion that the subject slides were for children. These are not relevant facts because it is obvious that adults used the slides. Indeed, Mr. Ray even used them. Additionally, anyone who has ever been around swimming pools knows that diving boards, slides and other similar apparatus are indeed normally used by younger people. The fact that Mr. Ray stated that the slides were "meant for children" does not mean that adults were prohibited from using them. Indeed, as has been stated repeatedly, SVGID had no express knowledge that the slides in question posed a risk to someone who might hit the bottom after using them with sufficient force to cause significant injury.

18. Mr. Ray indeed testified this way in his deposition. Such testimony, however, creates no issues whatsoever that are relevant to this motion. These referenced conversations do not show that SVGID had any express knowledge that someone of Ridgway's size and weight could ever use a slide, enter the water and then strike the bottom of the pool with sufficient force to break a bone or suffer other significant injury. The absence of any express knowledge along

- 8 -

1  those lines on the part of SVGID completely supports SVGID's entire immunity argument.

2       19.    In this paragraph, Mr. Ray is cited as testifying that he had hit the bottom of the
3  pool after using the waterslide.  Hitting the bottom of the pool does not equate to striking the
4  pool bottom with sufficient force to cause any sort of significant injury.  It should also be noted
5  that anyone who is standing up in a swimming pool is by definition "hitting the bottom."

6       20.    This paragraph basically summarizes Plaintiff's *contention* that SVGID had
7  "actual and express knowledge" that the slide at the pool was dangerous and hazardous before
8  Plaintiff's injury.  The referenced facts show no such thing.  No one was ever injured to any
9  extent by hitting the bottom of the pool before Plaintiff.  There is no evidence to the contrary.
10  Bluntly, there is no evidence that SVGID had any express knowledge that someone, such as
11  Plaintiff, could ever be significantly injured after using the slide and hitting the bottom because
12  the water was too shallow.

13       21.    In this paragraph, Plaintiff briefly discusses her injuries.  This shows that Plaintiff
14  "required expensive medical treatment, including surgery."  This is again supportive of SVGID's
15  entire motion!  As has been stated over and over again, SVGID's position is that it had no
16  express knowledge that someone, such as Plaintiff, could be significantly injured while using
17  these slides as the result of finding the water too shallow and hitting the bottom.  There is no
18  evidence whatsoever that anyone else, other than Plaintiff, ever experienced any mishap that
19  required any medical treatment, much less expensive medical treatment, including surgery.  If
20  there had been any such prior incidents, then Plaintiff most certainly would have uncovered same
21  during discovery.  The fact that no such evidence exists is completely supportive of SVGID's
22  position.

23       22.    In this paragraph, Plaintiff summarizes SVGID's position in its motion.  Plaintiff
24  is generally accurate in her assessment of SVGID's argument.

25       23.    This paragraph focuses on NRS 41.033, and the case law thereunder.  SVGID has
26  no particular quarrel with Plaintiff's characterization of either the referenced statute or the related
27  cases.  However, when Plaintiff argues that in light of the facts set forth in her opposition, it
28  shows that "SVGID did have express knowledge of a hazard," she misses the point.  The

1 evidence in this case that is presented in this summary judgment litigation shows, undisputedly,
2 that the hazard associated with the slides at the pool from SVGID's standpoint had to do with
3 young, inexperienced users finding the water too deep for them after using the slide and
4 becoming distressed.  **There is no admissible evidence that anyone other than Plaintiff ever**
5 **experienced any significant injury when using a slide and striking the bottom of the pool.**
6       Respectfully, there has to be some legal bounds on the concept of a hazard.  This is not
7 dissimilar to the concept of "negligence in the air" as described by Judge Benjamin Cardozo in
8 *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (N.Y. 1928).  In that regard,
9 Judge Cardozo, quoting others, wrote:  [N]egligence in the air, so to speak, will not do."  In the
10 same sense, SVGID respectfully submits that a "hazard in the air," so to speak, will not do.
11       The only cognizable hazard in the case at bar relating to these slides had to do with the
12 children using the slides and becoming distressed swimmers because the water was too deep.
13 There is simply no admissible evidence showing that SVGID had any express knowledge that
14 someone could be significantly injured after striking the bottom of the pool while using these
15 slides.  That has been said numerous times and the drum beat will continue.
16       It is also important to distinguish the case at bar from certain other fact patterns that are
17 discussed in relevant case precedent.  For instance, Plaintiff argues that the *Chastain* case stands
18 for the proposition that whether the slide actually constitutes a hazard is a question of fact for the
19 jury.  In *Chastain*, the condition at issue was inadequate sand in a sandbox.  In that regard, the
20 Nevada Supreme Court essentially accepted as true the notion that the sand in the sandbox was
21 not only inadequate, but also that Clark County School District was aware of that condition and
22 that if there had been adequate sand in the sandbox the Plaintiff's injury would not have
23 occurred.  Obviously, *Chastain* dealt with a transient condition; namely, inadequate sand in the
24 sandbox.  That condition could have been easily remedied by simply adding sand to the sandbox,
25 and as the case makes clear, Plaintiff presented evidence that the principal of the school had
26 actually ordered sand for the sandbox on at least five occasions.
27       The "condition" that we are dealing with in the case at bar is not in any way transient.
28 The condition that we are dealing with in the case at bar, first and foremost, involves a public

1  swimming pool.  A swimming pool is a concrete lined receptacle for water.  It is not going
2  anywhere.  It necessarily has a bottom and sides.  Those do not change from day to day.  The
3  only variable with respect to the pool might conceivably relate to the level of water in the pool.
4  If Plaintiff's incident had happened due to low water levels in the pool, then we might have a
5  *Chastain*-like situation.  Contrarily, the case at bar involves a fixed condition of a pool and there
6  is no argument or evidence that the water level in the pool was somehow too low.

7        Furthermore, this case involves a pool slide.  Again, the pool slide is not going anywhere.
8  It is a fixed apparatus next to the pool.

9        Respectfully, there simply has to be bounds on this "hazard" concept or NRS 41.033
10  immunity will be rendered a nullity.  Why is that?  Governmental entities own, operate and
11  control any number of roads, streets, sidewalks, buildings, and, yes, swimming pools.  If anytime
12  anyone suffers any sort of injury due to a condition of those improvements, Plaintiff would have
13  the Court believe that it would always be up to the jury to decide whether the condition was
14  hazardous.  That is not nor cannot be the law.  There has to be bounds on this concept.

15        What are the bounds?  Perhaps the best way to answer that question is to "reverse
16  engineer" the NRS 41.033 immunity concept.  This concept requires, of course, the existence of
17  a hazardous condition.  That is only half of the equation.  Even if we assume that there was a
18  hazardous condition for heavy adults at the pool, that begs the question.  The first part of the
19  equation is "actual or express knowledge" of the condition.  That is the element that is utterly
20  absent in this case.  Since actual or express knowledge is the trigger to act, it also defines the
21  duty that is owed.  That duty question is one for the Court to decide.

22        24.     In this paragraph, Plaintiff contends that neither the *Chastain* nor *Nardozzi* cases,
23  *supra*, support SVGID's summary judgment position.

24        The *Chastain* and *Nardozzi* cases set forth the basic law regarding NRS 41.033
25  immunity.  What is important to note about *Chastain* and *Nardozzi*, however, is that they involve
26  known or assumed transient conditions that are dangerous in and of themselves.  For instance, in
27  *Chastain*, the Court was dealing with known low levels of sand in a sandbox.  The Court
28  expressly assumed that if the sandbox had an adequate amount of sand in it, the injury would not

- 11 -

have happened. Because there was evidence in *Chastain* that CCSD had express knowledge of the low level of sand in the box, it was up to the jury to determine whether such a condition was a known hazard. The situation in *Nardozzi* involved a wet schoolhouse floor (an obviously transient condition) on a rainy day. In that case, there was no evidence that anyone from CCSD was aware of the wet condition on the floor, and accordingly, summary judgment was warranted.

It bears repeating that there is an important distinction between the factual situations in *Chastain* and *Nardozzi* and those in the case at bar. In *Chastain* and *Nardozzi*, the Nevada Supreme Court was dealing with transient or temporary conditions and CCSD's knowledge of them. In *Chastain*, CCSD was aware of low levels of sand in the box, and the Court ruled that it was going to be up to the jury to decide whether that was a dangerous condition. In *Nardozzi*, the "dangerous condition" was one and the same: A wet slippery floor. CCSD was found to have no actual knowledge of that condition, and summary judgment was granted.

In the case at bar, we are again not dealing with a temporary or transient condition. We are dealing with a swimming pool. A swimming pool has a known, fixed and static geometry. The same is true with respect to the waterslide in question. It does not come and go and cannot be cleaned up with a mop or fixed by adding something to it. This is not a situation where there is something wrong with the slide. There is no defect in it that caused an injury. Additionally, this is not a situation where there is something wrong with the pool. The pool is the pool. There is no allegation that there was inadequate water in the pool. Indeed, if that were the case, we might have a *Chastain*-like situation. There is no allegation that there were any design problems with the pool or slide. There is no evidence that the pool and slide violated manufacturer's recommendations, laws or applicable ordinances.

In the case at bar, we simply have a waterslide at a public pool. The clear evidence is that SVGID was indeed aware that the waterslide and pool posed a potential problem for young users who found themselves in water that was too deep for them. The record is completely devoid of any admissible evidence that SVGID had the requisite express knowledge that someone, such as Plaintiff, could ever be significantly injured while using the slide in question and hitting the bottom because she was too heavy and the water was too shallow.

The focus in this instance has to be not on whether the pool and slide set up was a hazard; the focus must be on whether SVGID was aware of any condition that was an actual hazard to a patron such as Plaintiff.  That is where there is an absence of evidence, and that is why summary judgment is warranted.

25. In this paragraph, Plaintiff discusses lifeguard testimony and contends that such a testimony supports the proposition that SVGID was aware of a hazard.  Respectfully, again, a "condition" that even is possibly a hazard has to be grounded in some sort of reality or real world experience.  An actionable "hazardous condition" does not float around in the luminiferous ether.  The record is completely and utterly devoid of any evidence that could even theoretically have put SVGID on express notice that someone of Plaintiff's size and weight could ever use the slide, find the water too shallow, and strike the bottom of the pool with sufficient force to cause any significant injury.

26. In this paragraph, Plaintiff discusses what SVGID must do to support a Motion for Summary Judgment.  Basically, this is a restatement of FRCP 56(c).

27. In this paragraph, Plaintiff contends that Mike Ariztia's affidavit that was appended to SVGID's motion is inadequate.  In particular, Plaintiff claims that the affidavit does not support the notion that "SVGID had no express knowledge that a hazardous condition existed at the pool."  Respectfully, the issue of a "hazardous condition" has to have some connection with Plaintiff's injury.  A "hazardous condition" cannot be theoretical (or, again, float around in the air); it must be grounded, actual and relevant to Plaintiff's injury.  What do we have here? We have a situation where any known hazardous condition with respect to the waterslide and pool was that children might find the water too deep for them after using the slide.  There is utterly no evidence, admissible or otherwise, that SVGID had any express knowledge that the condition of this pool was too shallow for heavy users, such as Plaintiff, and that the shallowness could cause any sort of serious or significant injury.  Again, the concept of a "hazardous condition" has to have some relevance to Plaintiff's injury.  In the case at bar, there is no such relevance because the "hazardous condition" with the pool, if any, was that the water was too deep where the slide was located, as opposed to too shallow.

- 13 -

28. In this paragraph, Plaintiff takes issue with Mr. Ariztia's affidavit because it does not state that he did not have knowledge that other patrons of the pool had hit the bottom of the pool after using the waterslide. Hitting the bottom of a swimming pool after jumping into it, diving off a diving board, or using a waterslide has probably happened dozens if not hundreds of times around the world since the Court started to read this sentence. Hitting the bottom of the pool after using an apparatus, such as a waterslide, is of no moment. Respectfully, the issue has to be whether or not anyone hit the bottom of the pool while using this waterslide with sufficient force to suffer a significant injury. Additionally, and not to again beat down a deceased equine, the concept of knowledge of a condition that could give rise to liability against SVGID must have bounds. An actionable condition cannot exist in the abstract, but must exist in the real world. Here, the requisite knowledge that someone could be significantly injured by hitting the bottom of the pool after using the waterslide flies in the face of what was known to SVGID, namely, the risk of young users finding the water too deep. That is the condition, water that is too deep for young users, that might theoretically be actionable if SVGID ignored the problem and allowed young people to drown or become water distressed when they cannot reach the bottom.

29. With respect to this paragraph, it simply bears repeating, again, that a condition or a hazard cannot exist in the theoretical. It must exist in the actual. The hazard known to SVGID was that the water in the pool was too deep in the vicinity of the slide and that youngsters who were not water safe would find themselves in distress. SVGID took precautions against that by stationing a lifeguard nearby. There is no evidence that SVGID had express knowledge that someone such as Plaintiff, could be significantly injured by finding the water too shallow. This is almost devolving into a "darned if you do, darned if you don't" scenario.

At the end of Plaintiff's 29th paragraph, she draws an analogy to a situation where a local government might claim that a bridge collapse on a major freeway about which it had express knowledge would not be a hazard until someone actually drives off the bridge. That analogy, obviously, is misguided. A more suitable analogy would be a situation where a local government was aware that there was a hazard with the bridge or freeway because the bridge

- 14 -

1  shadowed the freeway surface and caused ice and snow to accumulate below, which resulted in
2  numerous accidents involving passing motorists. That would be the type of hazard that would be
3  actually known to the governmental entity and would then trigger the obligation to act
4  reasonably. If, however, the local government was aware of the ice hazard but the bridge
5  collapsed and somebody drove off it, then it would be dealing with an entirely different hazard
6  from the one that it was aware of in the first instance. Applying that analogy to the instant case,
7  there is no question that SVGID had express knowledge that young users of the slide at the pool
8  could find the water too deep and get into distress because they were not water safe. That is
9  literally the polar opposite from the situation that we actually have here, which involves a grown
10 adult woman striking the bottom of the pool due to her weight and breaking her ankle. That is
11 something that is completely unprecedented in the known annals of the pool.
12         30.    In this paragraph, Plaintiff states her "*prima facie* premises liability claim." This
13 basically restates her entire legal position. Interestingly enough, the very first paragraph of that
14 sentence sets forth law that might be applicable to a bowling alley, a grocery store or a home
15 improvement center, but is not applicable to a governmental entity such as SVGID. The law on
16 governmental premises liability is that SVGID has an obligation to do something after it has
17 express knowledge of a condition that is hazardous. SVGID had no knowledge that someone,
18 such as Plaintiff, could become seriously injured after using the slide and finding that the bottom
19 of the pool was too shallow.
20         It is also notable that Plaintiff makes the contention that one of the things that SVGID
21 could have done prior to her incident was that it could have removed the slide from the pool.
22 With all due respect, this pool and the slides benefit the Sun Valley community. Is Plaintiff
23 really arguing that because lifeguards had noted a few people using a slide and hitting the bottom
24 of the pool, without significant injury, that they should have hired someone to dismantle the
25 slides, take them away and leave the pool in a decidedly "less fun" condition? Such an argument
26 is, respectfully, unfortunate, and would run counter to the best interest of the community.
27 * * *
28 * * *

## III.

## **RESTATEMENT OF POSITION AND CONCLUSION**

Plaintiff's incident at the Sun Valley Pool, and her injuries, were unprecedented. There is utterly no evidence that Sun Valley had express knowledge that someone, such as Ridgway, could be significantly injured by using the waterslide in question, striking the bottom and breaking a bone. The known "hazard," if any, regarding the waterslides was that the water was too deep for young users. Liability can only be assessed against SVGID if it had express knowledge of a *relevant* condition that was dangerous and then did not act reasonably. That is the law; that law is undisputed; and that law precludes recovery on the part of Plaintiff based upon the undisputed facts that are before the Court. Accordingly, SVGID is entitled to judgment in its favor as a matter of law pursuant to the immunity found in NRS 41.033 and case law thereunder.

DATED this 24th day of September, 2015.

THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER

By: */s/ Charles Burcham*
Charles L. Burcham, Esq., SBN 2673
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882
Attorney for Defendant

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER, and that on this date I caused the foregoing **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be served on all parties to this action by:

____  placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

__X__  United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

____  personal delivery

____  facsimile (fax)

____  Federal Express/UPS or other overnight delivery

fully addressed as follows:

**Luke Busby, Esq.**
**216 East Liberty Street**
**Reno, Nevada  89501**
*Attorney for Plaintiff*

DATED this 24th day of September, 2015.

　　　　　　　　　　　　　　　*/s/ Laura Bautista*
　　　　　　　　　　　　　An employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER

- 17 -